IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT A. GILL,                                    3:11-CV-01350-BR

           Plaintiff,                              OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

           Defendant.

MERRILL SCHNEIDER
Schneider Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

           Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**RICHARD M. RODRIGUEZ**
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900
Seattle, OR 98104-7075
(206) 615-2531

      Attorneys for Defendant

**BROWN, Judge.**

      Plaintiff Robert Gill seeks judicial review of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and his application for Supplemental Security Income (SSI) pursuant to Title XVI of the SSA, 42 U.S.C. § 42 U.S.C. § 1381-83(f).

      For the reasons that follow, the Court **REVERSES** the Commissioner's final decision and **REMANDS** this matter to the Commissioner pursuant to Sentence Four of Section 405(g) for further proceedings as set forth herein.

## ADMINISTRATIVE RECORD

      Plaintiff protectively filed applications for DIB and SSI on October 14, 2008, asserting he has been unable to work since December 31, 2007, because of depression, bipolar disorder, attention deficit hyperactivity disorder (ADHD), bipolar

2  - OPINION AND ORDER

disorder, schizo-affective disorder, and a memory impairment. Tr. 47, 62, 162.

On May 7, 2009, Plaintiff's applications were denied initially, and on December 11, 2009, they were denied on reconsideration.  Tr. 40-43.

On October 18, 2010, the ALJ held a hearing at which Plaintiff and a vocational expert (VE) testified.  Tr. 14-39.

On November 12, 2010, the ALJ issued a decision in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 47-55.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on September 28, 2011, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-5.

On November 10, 2011, Plaintiff filed his Complaint in this Court seeking review of the Commissioner's final decision.


## BACKGROUND

### I.   PLAINTIFF'S TESTIMONY AND WRITTEN EVIDENCE.

As of the October 10, 2010, hearing, Plaintiff was 42 years old.  He has a GED.  Tr. 23.  He is divorced and has two children who are 16 and 18 years old.  Tr. 23.

At one time Plaintiff worked as a helper in a bar managed by a friend.  Tr. 20-21.  The job ended about the same time that he was getting a divorce.  Tr. 21.  In 2007 Plaintiff worked at a

convenience store doing whatever the store manager asked him to
do, including cashiering, stocking shelves, and making coffee.
Tr. 18, 179.  Plaintiff quit after injuring his head in a
swimming pool, and it was the last job Plaintiff held.  Tr. 19.

Plaintiff has used drugs all of his life.  Tr. 27.  He has
a medical marijuana card but does not "use much" anymore because
he no longer has a grower.  Tr. 28-29.  He also has used
methamphetamine, and he tested positive for use of that drug in
July 2010.  Tr. 29.  Plaintiff's attorney stated Plaintiff has
been dependent on amphetamines for a long time.  Tr. 29.

If Plaintiff worked, he would need to be supervised closely
because he loses focus easily.  Tr. 31.  Plaintiff has worked
primarily for friends in the past, and they would be more likely
to overlook his failure to show up for work.  Tr. 32.

Plaintiff's hands frequently get sweaty because he is
nervous.  Tr. 32.  He is receiving medical help with his drug
abuse to avoid relapsing.  Tr. 34.  He has been able to keep most
of his scheduled medical appointments.  Tr. 35.

## II.  VE TESTIMONY.

The VE testified at the hearing that if Plaintiff is able to
perform only simple routine tasks with occasional public contact,
he would be limited to work in entry-level, unskilled jobs
involving repetitive tasks such as production-line assembly and
packing-line worker, which are jobs associated with a specific

4  - OPINION AND ORDER

vocational preparation (SVP) reasoning level of 2.  Tr. 33.  If he were to miss two or more days of work each month, he would be precluded from any gainful employment.  Tr. 34.  In addition, the VE noted if Plaintiff needed more than a 15-minute break every four hours or a 30-minute break every six hours, he would have difficulty maintaining a job.  Tr. 34.

**III. MENTAL-HEALTH TREATMENT EVIDENCE**[1]

  **A.  <u>Multnomah County Health Department</u>.**

  In December 2008 Plaintiff was seen by Licensed Clinical Social Worker (LCSW) Kelly Goodman, who was helping Plaintiff complete a Social Security disability questionnaire.  Tr. 275.  Plaintiff joked around and was hypomanic at the time, and he did not realize the importance of completing and submitting the questionnaire.  He told LCSW Goodman he had "special abilities" whereby he dreams and has premonitions about future events.  Tr. 275.

  LCSW Goodman diagnosed Plaintiff with Depressive Disorder NEC (not elsewhere classified) and assigned Plaintiff a GAF score of 50 (serious impairment in social, occupational, or school

---

[1] Plaintiff contends he is unable to engage in substantial gainful activity because of mental-health issues.  Accordingly, the Court addresses only the medical record reflecting his psychological impairments.

5  - OPINION AND ORDER

functioning).[2]  Two weeks later LCSW Goodman assessed Plaintiff's GAF score at 45.  Although LCSW Goodman noted Plaintiff had a good sense of humor, he "would be considered a bit out there to most folks."  Tr. 274.

Over the next 22 months (through October 2010) Plaintiff was seen on a regular basis for treatment of bipolar disorder, ADHD, and an anxiety disorder related to childhood abuse. Tr. 362-86, 389-468.  Plaintiff was consistently assigned a GAF score of 50 throughout that period.

In October 2010 LCSW Goodman assessed Plaintiff's ability to work, taking into account his use of medical marijuana and occasional methamphetamine abuse relapses (most recently in July 2010).  Tr. 469.  LCSW Goodman described Plaintiff's substance abuse relating to methamphetamine as attempts to self-medicate and stated that abuse "is caused by, and not the cause of, [Plaintiff's] mental impairments."  Tr. 469.  LCSW Goodman noted Plaintiff's use of marijuana, however, may "possibly be helping him alleviate his [mental-health] symptoms."  Tr. 469.  LCSW Goodman opined Plaintiff "struggles with concentration, persistence, and pace" to a "marked and extreme degree," and his

_____

[2] A Global Assessment of Functioning (GAF) score rates a person's psychological, social, and occupational functioning on a hypothetical continuum of mental-health illness.  *See* Diagnostic and Statistical Manual of Mental Disorders (DSM-1V) at 34.

6  - OPINION AND ORDER

ADHD symptoms are among the "most severe" she has ever seen.
Tr. 469.  His social functioning and activities of daily living
are also "impaired to a marked degree."  Tr. 469.  Finally, LCSW
Goodman opined "[a]fter two years of treatment and observation,
[she] is convinced [Plaintiff] is unable to sustain a job"
because "he would [not] be able to show up to work consistently
and on time . . ., focus for the requisite amount of time . . .
or interact appropriately with supervisors."  Tr. 470.

Registered Nurse (RN) Arthur Downard, MN, PMHNP, provided
psychiatric medication services for Plaintiff.  In October 2010
he wrote to Plaintiff's counsel listing Plaintiff's diagnoses as
follows:  "Bipolar I disorder;, ADHD; Cannabis dependence,
active;  Amphetamine dependence and Alcohol abuse, both in
remission."  Tr. 471.  Plaintiff has "marked deficits in social
functioning, poor hygiene, [and] a severely impaired
organizational capacity."  RN Downard concluded Plaintiff's
prognosis for much improvement in functioning is "poor."
Tr. 471.

**B.  Cascadia Mental Health.**

In February 2007 Plaintiff began receiving counseling at
Cascadia.  He reported a history of being molested by relatives
and others beginning at age five.  Tr. 306.  He remembered being
depressed since childhood and experiencing feelings of

7  – OPINION AND ORDER

abandonment, anger, and hostility.  Tr. 306.  He was prescribed
Ritalin and other medications during his childhood and started
taking Risperdal "several years ago."  Tr. 306.  He had been
homeless for "many years," was unemployed, and did not have
any interest in finding employment.  Tr. 306.  He is "easily
frustrated and distracted, which causes him to lose jobs."
Tr. 306.

During the course of his treatment at Cascadia, Plaintiff's
diagnosis was amphetamine dependence and post-traumatic stress
disorder.  Tr. 356.

Plaintiff reported a prior mental-health history accompanied
by psychiatric hospitalizations.  Tr. 307.

In April 2007 Plaintiff felt "antsy," but he was still
interested in applying for a culinary program.  He was encouraged
to do so.   Tr. 318.  During that same month he reported his
methamphetamine use had increased significantly after he moved in
with a friend.  He reported he "was so anxious, [he felt] like he
[was] going to  explode."  Tr. 354.  His "affect was much
improved" a week later.  Tr. 352.  He was continuing to use
marijuana, however, and was told not to come back to the clinic
again when he was under the influence."  Tr. 352.

Later in April 2007 Plaintiff came to the clinic in tears.
He stated he had been craving methamphetamine and had an argument
with a friend.  He talked of committing suicide by stabbing

himself and jumping off a building.  He was transported to Good
Samaritan Hospital.  Tr. 348.

In May 2007 Plaintiff failed to show up for a scheduled
appointment.  Tr. 359.

In June 2007 Plaintiff's participation in counseling was
terminated for lack of attendance although he was permitted to
re-enroll "when ready."  Tr. 340.

In September 2007 Plaintiff's participation in Cascadia's
program was again terminated for lack of attendance.  Tr. 339.

**IV.   PSYCHOLOGICAL EXAMINATION EVIDENCE:  <u>Daniel Scharf, Ph.D. -
     Clinical Psychologist</u>.**

In April 2009 Dr. Scharf performed a psychodiagnostic
examination of Plaintiff at the request of the Commissioner.

Plaintiff reported he smoked marijuana, but he denied other
drug use at that time.  He acknowledged using methamphetamine and
heroin in the past and stated he occasionally drinks alcohol.  He
had been hospitalized "more than 20 times," the last time being
"a few years ago."

Dr. Scharf diagnosed Plaintiff with dysthymia, rule-out
cognitive disorder NOS, and antisocial personality disorder.  He
assigned Plaintiff a GAF score of 55 (moderate difficulty in
social, occupational, or school functioning).  Tr. 284.  During
the evaluation, Plaintiff gave a "confusing history [and]
symptomatology."  Tr. 284.

Dr. Scharf noted Plaintiff had previously suffered a head injury at age 12 and suggested "neuropsychological testing may be helpful." Tr. 285. During the examination, Plaintiff appeared to be "capable of understanding and remembering short and simple instructions although he would have difficulty with more complex instructions." Tr. 285. He had "difficulty sustaining concentration and attention" and "would have difficulty with persistence." He is "able to engage in appropriate social interaction." Tr. 285.

## V.   PSYCHOLOGICAL CONSULTATION EVIDENCE.

### A.   <u>Megan D. Nicoloff, Psy.D. – Neuropsychologist</u>.

Dr. Nicoloff reviewed Plaintiff's medical records on behalf of the Commissioner and opined Plaintiff suffers from dysthymia. Dr. Nicoloff found Plaintiff would experience mild difficulties in his activities of daily living and in maintaining social functioning and moderate difficulties maintaining concentration, persistence, or pace. Plaintiff is moderately limited in his ability to understand and to remember detailed instructions, to carry out detailed instructions, and to maintain attention and concentration for extended periods. He is also moderately limited in his abilities to interact appropriately with the general public and to set realistic goals or to make plans independently of others. Plaintiff would be able to perform the most simple 1-2 step tasks consistently, but he would have

increasing difficulty performing tasks involving more than two steps.  He would be able to interact with the general public occasionally and would benefit from vocational guidance.  Tr. 300-02.

**B.  <u>Sandra L. Lundblad, Psy.D. - Psychologist</u>**

Dr. Lundblad reviewed Plaintiff's medical records and agreed with Dr. Nicoloff's assessment.

<u>**STANDARDS**</u>

The initial burden of proof is on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must prove his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a

preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).


## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. §§ 404.1521, 416.921.  Each step is potentially dispositive.

In Step One, the claimant is not disabled if the

12 - OPINION AND ORDER

Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See* 20 C.F.R. §§ 404.1521, 416.921.

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1521(a)(4)(ii), 416.921(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed Impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P. Appendix I (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations. 20 C.F.R. §§ 404.1520(e), 416.920(e). *See also* Social Security Ruling (SSR) 96-8p. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p,

at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  Assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9[th]Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden,

14 - OPINION AND ORDER

the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1),
416.920(g)((1).


### THE ALJ'S FINDINGS

In Step One, the ALJ found Plaintiff has not engaged in
substantial gainful activity since December 31, 2007, the alleged
onset date of his disability.  Tr. 49.

In Step Two, the ALJ found Plaintiff has severe impairments
related to dysthymic disorder NOS, personality disorder, and drug
and alcohol abuse.  *Id.*

In Step Three, the ALJ found Plaintiff's impairments do not
meet or equal any listed impairment.  The ALJ found Plaintiff
has the RFC to perform a full range of work at all exertional
levels, but he is limited to performing simple, routine tasks
with only occasional contact with the public.  Tr. 53.

Based on these findings, the ALJ concluded Plaintiff is
unable to perform any of his past relevant work.  Tr. 53.  The
ALJ, however, found Plaintiff is able to perform jobs identified
by the VE, including production-line assembler and packing-line
worker; *i.e.,* SVP 2 jobs, a substantial number of which are
available in the national economy.  Tr. 54-55.

Accordingly, the ALJ concluded Plaintiff is not disabled
and, therefore, is not entitled to an award of DIB or SSI.


15 - OPINION AND ORDER

## **DISCUSSION**

Plaintiff contends the ALJ erred:  (1) by failing to ask the VE whether her testimony was consistent with the Dictionary of Occupational Titles (DOT) and by relying on such testimony even though it was not consistent with the DOT, (2) by failing to give sufficient weight to the DDS[3] consulting physicians' medical opinions that Plaintiff was capable only of performing simple 1-2 step tasks, and (3) by considering whether Plaintiff's impairments would improve if he did not have a drug and alcohol addiction.

## I.    **VE TESTIMONY - DOT.**

Plaintiff asserts the ALJ's RFC evaluation at Step 3 that Plaintiff is limited to jobs involving "simple and routine tasks" indicates Plaintiff can only do work at SVP reasoning level 1.

At Step 5, however, the VE, in response to the ALJ's hypothetical, stated Plaintiff could do jobs that require SVP reasoning level 2 capability.  Plaintiff contends the ALJ erred by not obtaining clarification from the VE as to whether the VE's opinion as to the jobs that Plaintiff was capable of performing (*i.e.,* SVP reasoning level 2 jobs) was consistent with

---

[3] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a).

the Dictionary of Occupational Titles (DOT), which appears to limit Plaintiff to SVP reasoning level 1 jobs based on his limitations.

The Commissioner asserts Plaintiff's RFC, which limits him to jobs involving simple 1-2 step instructions, did not conflict with the medical evidence.  Accordingly, the ALJ's error in failing to seek clarification from the VE regarding her testimony was harmless error.  The Commissioner further argues Plaintiff has a high-school education, which is not inconsistent with an ability to work in a job with a SVP reasoning level 2 or 3.

**A.  <u>Standards</u>.**

SSR 00-4p unambiguously provides:  When a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles]."

SSR 00-4p further provides the adjudicator "'will ask' the vocational expert 'if the evidence he or she has provided' is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict." *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007).  "SSR 00-4p explicitly requir[es] that the ALJ determine whether the expert's testimony deviates from the Dictionary of Occupational Titles and

17 - OPINION AND ORDER

whether there is a reasonable explanation for any deviation."
*Id.* at 1153.  The ALJ's failure to so may be deemed "harmless" if
there is "no conflict or if the [VE] had provided sufficient
support" for her conclusion "to justify any potential conflicts
with the DOT."  *Id.* at 1154 n.19.

**B.  <u>Analysis</u>.**

The Commissioner concedes the ALJ erred by not asking the VE
about the apparent conflict between the VE's testimony and the
Dictionary of Occupational Titles.  The Commissioner, however,
contends the error was harmless because Plaintiff's limitation in
following 1-2 step instructions was belied by the fact that
Plaintiff has a high-school education, which indicates he has
"abilities in reasoning, arithmetic, and language skills" and,
therefore, would "generally [be considered as] someone who can do
semi-skilled through skilled work."

The Court, however, concludes the Commissioner's estimation
of Plaintiff's skills does not take into account the extent of
his mental impairments and the way those impairments impact his
ability to follow instructions.  Accordingly, the Court concludes
the ALJ erred when the ALJ failed to ask the VE whether her
opinion was consistent with the DOT in light of medical evidence
in the record that supports Plaintiff being limited to work
involving "simple and routine tasks"; *i.e.,* work at SVP reasoning
level 1 rather than level 2.

18 - OPINION AND ORDER

On this record, therefore, the Court concludes the ALJ's error was not harmless.

## II. DDS CONSULTING PSYCHOLOGISTS' OPINIONS.

The DDS consulting psychologists opined Plaintiff had a "very poor memory," that "at most" he "would be able to consistently perform tasks requiring 1-2 steps," that he would have difficulty with tasks longer than 2 steps, and that he would become "overwhelmed very easily."   Tr. 302.

Plaintiff argues the ALJ, however, minimized the consulting psychologists' opinions by not including in his finding that Plaintiff "at most" could perform simple 1-2 step tasks.

On this record the Court concludes the inclusion of the term "at most" would not materially alter the ALJ's finding that Plaintiff is limited to performing simple 1-2 step tasks.

## III. PLAINTIFF'S HISTORY OF ALCOHOL AND DRUG ADDICTION.

Plaintiff argues the ALJ erred by finding Plaintiff's psychological impairments would improve if he stopped abusing alcohol and drugs.

### A.  Standards.

A claimant is not considered disabled if drug addiction or alcoholism is a contributing factor material to the determination of disability.  42 U.S.C. § 1382c(a)(3)(J).  *See also Monan v. Astrue*, 377 F. App'x 629, 630 (9th Cir. 2010).  Substance abuse

19 - OPINION AND ORDER

is a material factor when the claimant's limitations would not
be disabling if the claimant stopped using drugs or alcohol.
20 C.F.R. §§ 404.1535(b).  Thus, if the claimant is found to be
disabled and there is medical evidence of substance abuse, the
ALJ must determine whether drug addiction or alcoholism "is a
contributing factor material to the determination of disability."
20 C.F.R. §§ 404.1535(a), 416.935(a).

     To assess the materiality of drug or alcohol abuse, an ALJ
must first conduct the five-step inquiry without distinguishing
the separate impact of alcoholism or drug addiction.  *Parra v.
Astrue*, 481 F.3d 742, 747 (9th Cir. 2007) (citing *Bustamante v.
Astrue*, 262 F.3d 949, 954 (9th Cir. 2001)).

     The claimant's substance abuse is a "contributing factor
material" to the disability determination when the claimant's
remaining limitations would not be disabling if the claimant
stopped using drugs or alcohol.  20 C.F.R. §§ 404.1535(b),
416.935(b).  If substance abuse is a "contributing factor
material" to the disability determination, a claimant is not
considered disabled.  42 U.S.C. § 1382c(a)(3)(J).  *See also Parra
v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  In such
materiality determinations, "the claimant bears the burden to
prove that drug addiction or alcoholism is not a contributing
factor material to [her] disability."  *Id.*

20 - OPINION AND ORDER

B.  __Analysis__.

The Court agrees with the Commissioner that Plaintiff's history of alcohol and drug abuse was not a material factor in the Commissioner's finding that Plaintiff is not disabled. Accordingly, the ALJ was not required to engage in a *Bustamante* analysis.  The Court, however, also agrees with the Commissioner that such abuse is, nevertheless, a permissible factor to consider in the disability analysis.

## __REMAND__

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings.  *See, e.g.*, *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1164 (9th Cir. 2012).  The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).

The Ninth Circuit has established a three-part test for determining when evidence should be credited and an immediate award of benefits directed.  *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).  The court should grant an immediate award of benefits when:  (1) the ALJ has failed to provide legally sufficient reasons for rejecting such

21 - OPINION AND ORDER

evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id*. The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See, e.g.*, *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

On this record the Court concludes a remand for further proceedings is required to obtain further testimony from the VE clarifying whether her testimony is consistent with the DOT in light of medical evidence that Plaintiff is limited to work involving simple and routine 1-2 step tasks at SVP reasoning level 1 and, if appropriate, whether there are jobs available in substantial numbers in the national economy that Plaintiff would be able to perform based on a hypothetical that includes a limitation of SVP reasoning level 1.


## CONCLUSION

For these reasons, the Court hereby **REVERSES** the Commissioner's final decision and **REMANDS** this matter to the

Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for

further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 14th day of January, 2013.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge